Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Blessing O. Ekpezu, State Bar No. 332308
E-Mail: bekpezu@hurrellcantrall.com
HURRELL CANTRALL LLP
800 West 6th Street, Suite 700
Los Angeles, CA 90017-2710
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendant, COUNTY OF LOS ANGELES

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JANE DOE, | Case No. 2:24-cv-08649-SPG(SKx) |
| Plaintiff, | **JOINT APPENDIX OF FACTS** |
| v. | **Hearing Date: November 12, 2025**<br>**Time:** 1:30 p.m.<br>**Venue:** Courtroom 5C |
| COUNTY OF LOS ANGELES, a municipal entity; AARON TANNER, an individual, DOES 1-100 inclusive, | |
| Defendants. | [Assigned to Hon. Sherilyn Peace Garnett, Courtroom "5C"] |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Plaintiff JANE DOE ("Plaintiff") and Defendant COUNTY OF LOS ANGELES ("County") hereby submit the following Joint Appendix of Facts ("JAF") pursuant to this Court's Standing Order re MSJ (Dkt. 22):

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| 1. | Plaintiff and Tanner began a romantic relationship in 2020 and made the | Plaintiff's deposition transcript, | Not disputed. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | |
|---|---|---|---|
| | relationship "official" in early 2021. | attached to the Joint Appendix of Evidence as Exhibit A (hereinafter, "Cook depo") at pp. 36:17-24; 41:16-25; 42:1-16. | |
| 2. | Plaintiff acknowledges that she knew Tanner was married at the time, yet she and Tanner nevertheless maintained a consensual romantic relationship. | Cook depo at pp. 42:17-19; 43:11-13. | Disputed in that Tanner told Plaintiff that he was separated from his wife and living apart from her. Plaintiff Deposition, Plaintiff Decl. Objection: irrelevant, included with intent to prejudice the Plaintiff |
| 3. | Plaintiff and Tanner lived together at an apartment near 16th Street in the City of Lancaster, where Plaintiff resided with her daughter. | Cook depo at pp. 44:19-25; 45:1-4; 46:16-25. | Disputed. Plaintiff and Tanner never lived together. Plaintiff Decl. ¶ 6. |
| 4. | Tanner frequently stayed overnight and kept personal | Cook depo at pp. 45:24-25; 46:1- | Not disputed. |

2

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | |
|---|---|---|---|
| | belongings at the apartment. | 15. | |
| 5. | The relationship ended in September 2022, and Tanner moved out of the apartment. | Cook depo at pp. 51:10-13. | Not disputed. |
| 6. | Tanner was employed with the Los Angeles County Sheriff's Department ("LASD") as a deputy sheriff during the period of their relationship. | Declaration of Deputy Christopher Deacon ("Deacon Decl.") at ¶3. | Not disputed. |
| 7. | Tanner was subsequently terminated from his employment with LASD on December 1, 2023, in connection with an unrelated incident. | Deacon Decl. at ¶3. | Not disputed. |
| 8. | Plaintiff testified that Tanner treated her well at the beginning of the relationship but that the relationship deteriorated over time. | Cook depo at pp. 48:13-25; 49: 1-15 | Not disputed. |
| 9. | She alleges that the first physical incident occurred at their apartment toward the end of 2021, at night, during an argument in which Tanner threw her on the bed, | Cook depo at pp. 85: 8-25; 86: 1-7; 121: 24-25; 122: 1-25; 123: 1-23 | Not disputed. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

|     |                                                                                                                                                                          |                                                        |                                                                                                                                                   |
| --- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ------------------------------------------------------ | ------------------------------------------------------------------------------------------------------------------------------------------------- |
|     | struck her hip, placed her face down, put his knee on her back, and choked her.                                                                                          |                                                        |                                                                                                                                                   |
| 10. | Plaintiff claims that after this first incident, Tanner choked her on multiple occasions at the apartment, in vehicles, and in bars.                                     | Cook depo at pp. 125: 8-25; 126: 1-11                  | Not disputed.                                                                                                                                     |
| 11. | She further alleges that throughout the relationship, Tanner grabbed and twisted her arms roughly fifty times, typically when she tried to walk away from an argument or when he wanted her to look at him. | Cook depo at pp. 96: 1-8; 103: 9-25                    | Not disputed.                                                                                                                                     |
| 12. | She recounts that after each episode, Tanner would apologize and the relationship would temporarily return to normal.                                                   | Cook depo at pp. 104: 10-19                            | Disputed. Tanner often did apologize but not after every instance of choking Plaintiff unconscious. Plaintiff Decl. __                             |
| 13. | Plaintiff describes a March 2022 incident in Las Vegas during the "Baker to Vegas" event.                                                                               | Cook depo at pp. 102: 17-22                            | Disputed in that this incident occurred in April 2022, not March. Plaintiff Decl. ¶ 25.                                                            |
| 14. | While riding in a private                                                                                                                                                | Cook depo at pp.                                       | Not disputed.                                                                                                                                     |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | |
|---|---|---|---|
| | SUV with three of Tanner's colleagues, she alleges that Tanner became irritated when she attempted to get his attention, and so he grabbed and twisted her wrists, and called her a "bitch." | 105: 10-25; 106: 1-12 | |
| 15. | During the same ride, she asked for a sweater and Tanner allegedly threw his backpack at her. | Cook depo at pp. 110: 21-25; 111: 1-2 | Not disputed. |
| 16. | Plaintiff did not ask the other passengers for help. | Cook depo at pp. 111: 17-25; 112: 1-13 | Not disputed. |
| 17. | When they arrived at the hotel, Plaintiff alleges Tanner remained upset. | Cook depo at pp. 113:16-18 | Not disputed. |
| 18. | He asked her to change her outfit, and when she refused, Tanner allegedly chased her into the bathroom, broke a glass shower door, tackled her to the floor, put his knee on her back, and struck her. | Cook depo at pp. 113: 21-25; 114: 1-8 | Not disputed. |
| 19. | She did not report this incident to the friends who | Cook depo at pp. 116: 10-13 | Not disputed. |

5

| | | | |
|---|---|---|---|
| | accompanied them or to anyone at LASD. | | |
| 20. | Plaintiff also describes an incident on New Year's Eve of 2022 at a Lancaster bar called Schooners. | Cook depo at pp. 132: 8-25; 133: 1-3 | Not disputed. |
| 21. | After she hugged a bouncer, Tanner allegedly became upset. | Cook depo at pp. 133: 5-9 | Not disputed. |
| 22. | Around 2:00 a.m., Tanner asked her to drive behind him. | Cook depo at pp. 133: 11-21 | Not disputed. |
| 23. | While driving his private blue Subaru, Plaintiff alleges Tanner suddenly braked at the intersection of 30th Street and Avenue L, causing Plaintiff's vehicle to rear-end Tanner's. | Cook depo at pp. 134: 10-20; 136: 4-10; 139: 21-23 | Not disputed. |
| 24. | Plaintiff claims a bystander called 911 to report the incident and that Tanner used his cell phone to cancel the call. | Cook depo at pp. 141: 2-19 | Not disputed. |
| 25. | Plaintiff and Tanner left the scene within minutes, and Plaintiff does not know | Cook depo at pp. 148: 19-25; 149: 1-16 | Undisputed. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | |
|---|---|---|---|
| | whether emergency personnel or law enforcement ever responded. | | |
| 26. | Plaintiff further claims that Tanner "stalked" her during and after the relationship, by appearing at her gym (Planet Fitness in Lancaster), at a grocery store while she was shopping and at her place of employment. | Cook depo at pp. 154: 16-20; 159: 22-25; 160: 1-11; 161: 11-25; 162: 1-25; 166: 1-13 | Not disputed. |
| 27. | In her FAC, Plaintiff alleges the stalking continued until the filing of this action. | FAC at 2:7-8 and 25-27 | Not disputed. |
| 28. | She admits that on each occasion, Tanner never approached, spoke to, or otherwise interacted with her. | Cook depo at pp. 274: 17-25; 275: 1-2 | Disputed as to "not approach," as Tanner was repeatedly in close proximity to Plaintiff after this action was filed Plaintiff Decl. ¶ 35. |
| 29. | Her apartment manager allegedly told her that a man in plain clothes was surveilling her apartment complex, but Plaintiff admits she does not know whether | Cook depo at pp. 163: 16-25; 164: 1-22; 173: 2-20 | Disputed, the individual surveilling the apartment was a deputy from LASD. Plaintiff Decl. ¶ 36. |

| | | | |
|---|---|---|---|
| | this person was affiliated with Tanner or with the County. | 8 | |
| 30. | She admits she made no reports to the County or to law enforcement regarding these incidents when they occurred. | Cook depo at pp. 176: 6-18; 222: 16-25 | Disputed. Plaintiff did ask the bystander to call 911 for her, after Tanner caused her to violently crash, and the bystander did call, only to have Tanner use his authority as a peace officer and as leader of the Rattlesnakes to call off the 911 into himself. Plaintiff Dep. at 146:2-25 and Decl. ¶ 30. |
| 31. | Plaintiff describes a separate 2022 incident at their apartment in which Tanner displayed a county-owned firearm and his personal knife because he believed she had changed the locks. | Cook depo at pp. 180: 8-25; 181: 1-25; 188:8-15 | Not disputed. |
| 32. | She states that Tanner had just returned from work wearing plain clothes when | Cook depo at pp. 183: 15-25; 184: 1-3 | Not disputed. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

| | | | |
|---|---|---|---|
| | this incident occurred. | | |
| 33. | Tanner put the gun and knife away when he was convinced Plaintiff hadn't changed the locks and then they reconciled. | Cook depo at pp. 189:5-25 | Disputed as to reconciled. Plaintiff Deposition and Decl. |
| 34. | Plaintiff recounts that Tanner took her on multiple ride-alongs in his LASD patrol vehicle and occasionally used the patrol car to transport her and her daughter. | Cook depo at pp. 191: 17-25; 192: 1-9 | Not disputed. |
| 35. | She admits she never signed the waiver forms required by LASD for civilian ride-alongs. | Cook depo at pp. 192: 10-21; 193: 24-25; 194: 1-13 | Not disputed. |
| 36. | She does not point to any assault occurring during the ride-alongs. | Cook depo at pp. 191:17-25; 192:1-9; 193:24-25; 194:1-13; 195:10-19 | Disputed. The County misstates Plaintiff's deposition testimony. At 191:9-13, when the County's attorney asks, "And did any of this incidents [sic] occur outside of your home?" to which |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | Plaintiff answered "No," the question was in reference to an incident in which Tanner got angry and threatened Plaintiff because he believed Plaintiff had changed the locks to her home. (Cook Dep. at 186:21-187:21.) Plaintiff did *not* testify that no assault occurred during the ride-alongs. While Plaintiff was not choked unconscious inside the patrol call during a ride along, the choke out did occur while she was Tanner's ride along that day, and Tanner was still on duty. Tanner also twisted Plaintiff's arm to cause her unbearable pain. Plaintiff Decl. ¶¶ 15, |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

|  |  |  | 17. |
|---|---|---|---|
| 37. | Plaintiff contends that the alleged physical assaults occurred both while Tanner was on duty and while off duty. | Cook depo at pp. 177: 1-4 | Not disputed. |
| 38. | When asked to describe the supposed on-duty incidents, she testified that every incident she characterizes as occurring "on duty" happened inside their shared apartment when Tanner came home on his lunch break and an argument ensued. | Cook depo at pp. 177: 5-24 | Disputed. Yes, as to Tanner choking her unconscious, he would be at the apartment during lunch or sometimes while she was on a Ride-Along, while Tanner was on duty; Tanner engaged in other, non-choke out violence on Plaintiff while they were out on patrol together. Plaintiff Decl. ¶¶ 9, 13, 15, 16. |
| 39. | She admits that all alleged on-duty incidents occurred inside the apartment and that all other incidents occurred while Tanner was off duty. | Cook depo at pp. 191: 9-15 | Disputed. The County misstates Plaintiff's deposition testimony. At 191:9-13, when the County's attorney asks, "And |

did any of this incidents [sic] occur outside of your home?" to which Plaintiff answered "No," the question was in reference to an incident in which Tanner got angry and threatened Plaintiff because he believed Plaintiff had changed the locks to her home. (Cook Dep. at 186:21-187:21.) Plaintiff did *not* testify that no assault occurred during the ride-alongs. Undisputed as to Tanner choking her unconscious; he would be at the apartment during lunch or some other time of day, while on duty; Tanner engaged in other, non-choke out violence on

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | |
|---|---|---|---|
| | | | Plaintiff while they were out on patrol together. Plaintiff Decl. ¶¶ 9, 13, 15, 16. |
| 40. | She further admits that she did not report any of these incidents to LASD or the County before the summer of 2023 and that no LASD management personnel were aware of Tanner's alleged conduct during the relationship. | Cook depo at pp. 176: 13-22; 232: 2-5; 248: 19-23 | Disputed. Multiple supervisors witnessed Tanner bring Plaintiff along for ride alongs about 30 times; LASD followed Tanner's order to call off the 911 into him when he intentionally caused Plaintiff to violently crash her car, and then forcibly removed her from the scene. Plaintiff Dep. at 146:2-25 and Decl. ¶ 30. |
| 41. | Plaintiff also recounts that Tanner told her he was the leader of a group of deputies called the "Rattlesnakes." | Cook depo at pp. 89: 5-7; 200: 5-10 | Not disputed. |
| 42. | Tanner allegedly told her he had a tattoo on his right leg signifying membership in the | Cook depo at pp. 211: 4-11; 212: 18-25; 213; 1-5; | Not Disputed. |

13

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | |
|---|---|---|---|
| | group. | 218: 12-15 | |
| 43. | Plaintiff described the group as operating like a gang, and claimed Tanner told her the group controlled the Lancaster station. | Cook depo at pp. 204: 7-11 | Not disputed |
| 44. | Plaintiff admits that her knowledge of the alleged Rattlesnakes group comes entirely from Tanner's statements and that she has no independent source of information. | Cook depo at pp. 204: 25; 205: 1-16 | Disputed. In addition to what Tanner told her, Plaintiff witnessed Tanner operate as the leader of the station, with even supervisors deferring to him. Plaintiff Decl. ¶¶ 19, 20. |
| 45. | She admits she never reported anything about the alleged group to the County. | Cook depo at pp. 236: 1-7 | Disputed. Plaintiff reported it to LASD in interviews. Plaintiff Dep. at 146:2-25 and Decl. ¶ 30; Kennedy Decl. ¶¶ 5, 10. |
| 46. | She admits she is not aware of any County policy encouraging deputy gangs. | Cook depo at pp. 236: 9-21 | Not disputed as to Plaintiff's personal knowledge. |
| 47. | She admits she knows of no LASD management personnel who approve of | Cook depo at pp. 236: 22-24 | Disputed but irrelevant as to lack of personal knowledge. Plaintiff |

14

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

| | | | |
|---|---|---|---|
| | such a group. | | does not know most names of LASD management, but she knows Lieutenant Clayton Marion by name and observed several supervisors including Watch Commanders allow and encourage the flourishing of the Rattlesnakes under the leadership of Tanner at the Lancaster Station. Plaintiff Decl. ¶¶ 43-45. |
| 48. | She admits she possesses no documents showing that LASD management knew of the group's existence. | Cook depo at pp. 237: 8-15 | Disputed. Plaintiff now knows of documents showing all of LASD and County leadership knew of the group's existence and that it is depriving citizen's like herself of their constitutional rights. Kennedy Decl.; Clark Decl.; County expert |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | Neil Tyler COC Testimony and Deposition |
|---|---|---|---|
| 49. | She further admits she has no evidence that Tanner was improperly trained. | Cook depo at pp. 241: 21-23 | Disputed. The County failed to properly train and supervise Tanner and other deputy gang members. Neil Tyler COC testimony, Ex. COC/BOS March 2023 Report; Clark and Kennedy Decl. |
| 50. | She concedes that the County did not encourage or approve of Tanner's conduct. | Cook depo at pp. 247: 10-12 | Disputed. The fact that Plaintiff is a resident and not an employee of LASD, does not change the fact that the County failed to properly train and supervise Tanner and other deputy gang members, and encouraged Tanner's conduct, Neil Tyler COC testimony, Ex. |

16

| | | | COC/BOS March 2023 Report; Clark and Kennedy Decl. |
|---|---|---|---|
| 51. | In the summer of 2023, several months after Plaintiff and Tanner ended their relationship, Plaintiff received a call from an investigator from LASD regarding an unrelated matter that led to an internal affairs investigation involving Tanner. | Cook depo at pp. 69:12-25; 70:1-18. | Disputed in that the matter was not unrelated; the incident happened while Plaintiff was with Tanner on a patrol call, on a Ride-Along, where Tanner let a drunk driver (another deputy) go without citation. Plaintiff Decl. ¶ 38. |
| 52. | During that call, she informed the investigator of her allegations against Tanner. | Cook depo at pp. 70:11-25; 71:1-24. | Not disputed. |
| 53. | This was her first notice to the County regarding these events. | Cook depo at pp. 69:12-25; 70:1-18. | Disputed. Upon Tanner's orders, LASD called off the 911 call into Tanner, after Tanner intentionally caused the Plaintiff to violently crash her car, |

17

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE    (213) 426-2000

| | | | |
|---|---|---|---|
| | | | and Plaintiff asked a bystander to call 911 to help save her. Plaintiff Dep. at 146:2-25 and Decl. ¶ 30. |
| 54. | Approximately one hour later, two LASD investigators arrived at Plaintiff's home to interview her. | Cook depo at pp. 71:25; 72:1-8. | Disputed in the characterization of the two individuals who came to Plaintiff's house as "investigators." Both of these individuals, Kaylee Volk and Clayton Marion, were from Tanner's station. Marion was Tanner's associate and friend and knew that Plaintiff had been in a relationship with Tanner. Marion went to Plaintiff's house to intimidate the Plaintiff and report back to Tanner what she said. Plaintiff's Decl. ¶ 43. |
| 55. | Plaintiff recognized the male | Cook depo at pp. | Disputed as to label of |

18

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | |
|---|---|---|---|
| | investigator, identified as "Marion," as a friend of Tanner and asked that he be excused, which he was. | 72:18-25; 73:1-8. | "investigator." |
| 56. | The female investigator, identified as "Kaylee," then conducted the interview. | Cook depo at pp. 73:9-25; 74:1-25; 75:1-4; 77:6-13 | Disputed to label as investigator. |
| 57. | LASD's Internal Criminal Investigations Bureau (ICIB) opened an investigation into Plaintiff's allegations against Tanner, which remains ongoing. | Deacon Decl. at ¶4. | Disputed. The investigation was concluded. Kennedy Decl. ¶ 10. |
| 58. | LASD maintains a written Family Violence Policy that expressly prohibits employees from engaging in acts of family or domestic violence. | Deacon Decl. at ¶5; Ex. A. | Not disputed. |
| 59. | The Family Violence Policy requires that all incidents of family violence involving Department employees be promptly evaluated and, if necessary, formally investigated, and provides that violations are subject to | Deacon Decl. at ¶5; Ex. A. | Not disputed. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | |
|---|---|---|---|
| | disciplinary action up to and including termination. | | |
| 60. | LASD operates a Ride-Along Program, which permits members of the public to accompany deputies only with advance approval by a station or unit commander and a signed written waiver. | Deacon Decl. at ¶6; Ex. B. | Not disputed. |
| 61. | The Ride-Along Program policy provides that unauthorized ride-alongs are strictly prohibited. | Deacon Decl. at ¶6; Ex. B. | Disputed. Absence of a waiver does not erase the fact that a Ride-Along took place. Plaintiff's Ride-Alongs with Tanner were tacitly authorized by LASD as it was done openly in front of numerous deputies and supervisors and never stopped by anyone at LASD. Plaintiff's Decl. ¶¶ 11, 13; Clark Decl. ¶ 9. |
| 62. | LASD maintains a written policy entitled | Deacon Decl. at ¶7; Ex. C. | Disputed. |

20

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

| | "Prohibition—Law Enforcement Gangs and Hate Groups", which forbids employees from participating in, promoting, or soliciting others to participate in any law-enforcement gang or hate group. | | The defendant County makes the party admission that LASD does have such a useless policy on paper, but it is not implemented, and has not ended the County 50 year practices of encouraging the flourishing of deputy gangs and deprivations of residents' civil rights. Kennedy and Clark Decl., County expert Tyler COC and Deposition Testimony, Exhibits 2013 DOJ and 2023 COC/BOS. Even though deputies confirmed to ICIB that Tanner was the shot caller and leader of the rattlesnakes, and committing illegal acts such as withholding |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | |
|---|---|---|---|
| | | | back up on other deputies' calls to try to get them killed, LASD did not terminate Tanner or any other Rattlesnakes members for what was done to Plaintiff; Tanner was terminated for some unrelated matter. Kennedy Decl. |
| 63. | The Law-Enforcement Gangs policy requires that substantiated violations be reported to the Commission on Peace Officer Standards and Training (POST) and provides that violations are subject to disciplinary action up to and including termination. | Deacon Decl. at ¶7; Ex. C. | Not disputed. |
| 64. | LASD has no policy or custom authorizing deputies to commit domestic violence, to take civilians on unauthorized ride-alongs, or to participate in any so- | Deacon Decl. at ¶¶5-7; Exs. A-C. | Disputed. See response to JAF No. 63. |

22

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | called deputy gang. | | |
|---|---|---|---|---|
| | 65. | Before commencing suit, Plaintiff submitted a Government Tort Claim to Los Angeles County on February 27, 2024. | Declaration of Yancely Welch ("Welch Decl.") at ¶4; Ex. D. | Not disputed. |
| | 66. | In a written response dated March 18, 2024, the County advised that the claim was untimely as to incidents occurring before August 27, 2023, and deficient as to any incidents after that date, because it failed to identify the claimant and the County employee or employees alleged to have caused the injury. | Declaration of Lindsay Yoshiyama ("Yoshiyama Decl.") at ¶5; Ex. F. | Not disputed. (not relevant to civil rights claim, only to negligence, and as to negligence it's an ongoing tort) |
| | 67. | The letter also specifically requested additional details so that the County could investigate the allegations. | Yoshiyama Decl. at ¶5; Ex. F. | Disputed. The letter actually demanded for Plaintiff to be unmasked, to reveal her identity. Also, Plaintiff was interviewed by ICIB already, so the letter is not genuine. |

23

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | Plaintiff's Decl., Attorney Decl. |
|---|---|---|---|
| 68. | On May 29, 2024, the same day she filed the complaint, Plaintiff submitted an amended claim that alleged the same facts but added the names of Plaintiff and Tanner. | Welch Decl. at ¶5; Ex. E. | Not disputed. |
| 69. | Before that amended claim was received, the County had already issued a second written response on April 25, 2024, formally rejecting the original claim and reiterating that it was untimely and deficient. | Yoshiyama Decl. at ¶6; Ex. G. | Not disputed. |
| 70. | No application for late-claim relief was ever filed. | Welch Decl. at ¶6. | Not disputed. Plaintiff intends to dismiss the negligence claim. |

## PLAINTIFF'S ADDITIONAL FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| No. | Fact | Supporting Evidence | Defendant's Response |
|---|---|---|---|
| 71. | The idea for the ride-alongs developed after Plaintiff told | Plaintiff Decl. ¶ 3. | Disputed. This assertion directly |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | |
|---|---|---|---|
| | Tanner of her interest in working in law enforcement one day and Tanner invited Plaintiff to participate in LASD's ride-along program. | | contradict Plaintiff's deposition testimony about the circumstances surrounding the ride-alongs. See Cook depo at pp. 191:17-25; 192:1-9; 193:24-25; 194:1-13. |
| 72. | During the ride-alongs, Tanner was on duty and in uniform. | Plaintiff Decl. ¶ 11. | Undisputed. |
| 73. | Tanner took Plaintiff on ride-alongs sometimes weekly, involving situations where other deputies and supervisors would observe Plaintiff on the calls, as Deputy Tanner, in uniform, would assist other deputies with their calls or deputies would assist Tanner on his calls. | Plaintiff Decl. ¶ 11. | Undisputed that Tanner took Plaintiff on multiple, unauthorized ride-alongs. Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony regarding the circumstances surrounding the ride-alongs. See Cook depo at pp. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

|  |  |  | 191:17-25; 192:1-9; 193:24-25; 194:1-13.

Plaintiff explicitly stated that "[n]o one was aware" of her participation in the ride-alongs. See Cook depo at p. 192:17-18. |
|---|---|---|---|
| 74. | During the ride-alongs, Plaintiff was required to stay by Tanner's side during his entire shift, regardless of whether he and Plaintiff were in the patrol car, on foot at a call, working side-by-side at the station, or while on lunch break (often at Plaintiff's apartment). | Plaintiff Decl. ¶ 12. | Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony regarding the circumstances surrounding the ride-alongs. See Cook depo at pp. 191:17-25; 192:1-9; 193:24-25; 194:1-13. |
| 75. | Ride-alongs entailed not only the time spent riding in the patrol vehicle but also the periods when Plaintiff accompanied Tanner during his shift outside the vehicle when responding to calls and | Clark Decl. ¶ 6. | Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony regarding the circumstances surrounding the ride- |

| | | | |
|---|---|---|---|
| | also on breaks. | | alongs. See Cook depo at pp. 191:17-25; 192:1-9; 193:24-25; 194:1-13. |
| 76. | By LASD policy, patrol deputies are not allowed to take off-duty "lunch breaks." Patrol deputies can eat lunch, but they continue to be on duty. If the ride-along participant eats lunch (regardless of location), the ride-along does not pause during the "break." | Clark Decl. ¶ 7. | Disputed. |
| 77. | In order to minimize LASD liability, participants in the "Ride-Along" program are asked to sign a Waiver of liability. If the participant does not sign the Waiver, the department could be liable for injuries suffered by the participant. The Watch Commander (not the deputy) is responsible for making sure the Waiver is signed. | Clark Decl. ¶ 8. | Undisputed. |
| 78. | If a participant does not sign | Clark Decl. ¶ 9. | Undisputed. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 9017-2710
TELEPHONE  (213) 426-2000

| | | | |
|---|---|---|---|
| | the Waiver but still participates in the "Ride-Along," it is still a "Ride-Along," and the civilian is still a participant in that "Ride-Along." A lack of a signed Waiver does not turn a "Ride Along" into something else. A signed Waiver is not needed to make a "Ride Along" official. | | |
| 79. | Plaintiff was unaware of the Ride-Along Program's requirement that she sign a waiver and no one from LASD instructed her to sign one. | Plaintiff Decl. ¶ 10. | Undisputed. |
| 80. | Tanner kept sheriff department equipment, including his LASD firearm, at the apartment. | Plaintiff Decl. ¶ 7. | Undisputed. |
| 81. | Tanner took Plaintiff on ride-alongs on over 30 occasions, where other deputies and supervisors would observe Plaintiff on | Plaintiff Decl. ¶¶ 10, 11, 21. | Undisputed that Tanner took Plaintiff on multiple, unauthorized ride-alongs. |

28

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | |
|---|---|---|---|
| | the calls, as Tanner would assist other deputies with their calls or deputies would assist Tanner on calls. | | Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony regarding the circumstances surrounding the ride-alongs. See Cook depo at pp. 191:17-25; 192:1-9; 193:24-25; 194:1-13. Plaintiff explicitly stated that "[n]o one was aware" of her participation in the ride-alongs. See Cook depo at p. 192:17-18. |
| 82. | Lancaster Station personnel, including supervisors such as the watch commander and a lieutenant repeatedly saw Plaintiff accompany Tanner to work at the station. | Plaintiff Decl. ¶ 13. | Undisputed. |
| 83. | Plaintiff observed Tanner to be in charge of the Lancaster | Plaintiff Decl. ¶ 14. | Vague as to the term "in charge." |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

|  |  |  |  |
|---|---|---|---|
| | Station, as deputies and supervisors deferred to him. | | Undisputed that Tanner was assigned to Lancaster Station and had a good working relationship with his colleagues. |
| 84. | Supervisors did not object to Tanner having Plaintiff accompany him on ride-alongs, and at the station; no supervisor ever objected to Plaintiff being on ride alongs on calls with Tanner; no supervisor ever questioned Tanner because of his status at the station, in control of it. | Plaintiff Decl. ¶¶ 11, 13. | Undisputed that Tanner took Plaintiff on multiple, unauthorized ride-alongs.<br><br>Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony regarding the circumstances surrounding the ride-alongs. See Cook depo at pp. 191:17-25; 192:1-9; 193:24-25; 194:1-13.<br><br>Plaintiff testified that "[n]o one was aware" of her participation in |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | | |
|---|---|---|---|---|
| | | | | the ride-alongs. See Cook depo at p. 192:17-18. |
| 85. | The Baker to Vegas event is a department event, attended by the sheriff and other County officials, involving LASD and other law enforcement agencies; deputy gang members dominate the event. | Clark Expert Decl. ¶ 8; Kennedy Decl. ¶ 8 [Ex. C, p. 30]; Plaintiff Decl. ¶ 25. | | Undisputed that LASD is one of the several law enforcement agencies that participates in the yearly Baker to Vegas event.

Disputed that the event is a "department event." Baker to Vegas is a privately organized, multi-agency endurance relay open to law enforcement teams from across the country. Participation by LASD personnel is voluntary, off-duty, and self-funded. The event is not sponsored, controlled or overseen by the County of Los |

31

| | | | Angeles or LASD command staff. See Baker to Vegas Official Website – https://bakervegas.net/ |
|---|---|---|---|
| 86. | In December 2021, after leaving a bar, Tanner told Plaintiff, driving in a separate vehicle, to follow him. Plaintiff tried to keep up with Tanner's vehicle as he was driving very fast. Then suddenly Tanner slammed on his brakes at the intersection of 30th Street and Avenue L in Lancaster, intentionally causing Plaintiff to violently crash into his vehicle. Tanner did this act on purpose to make Plaintiff violently crash her car, after which he laughed about causing Jane Doe to crash into his car. Tanner did this act on purpose to make Plaintiff violently crash her | Plaintiff Decl. ¶ 29; Plaintiff Dep. at 133:5-136:10. | Undisputed that on December 31, 2021 (i.e. New Year's Eve of 2022), Tanner and Plaintiff were involved in a traffic collision at the intersection of 30th Street and Avenue L in Lancaster.<br><br>Otherwise disputed to the extent that these assertions directly contradicts Plaintiff's deposition testimony regarding the circumstances surrounding this incident. See JAFs 20-25 and supporting evidence. |

| | | | |
|---|---|---|---|
| | car, after which he laughed about causing Jane Doe to crash into his car. | | |
| 87. | Plaintiff asked bystander for help, telling her she was unsafe saying that Tanner was "psycho," and bystander called the sheriff's department, 911. | Plaintiff Dep. at 139:8-142:4; Plaintiff Decl. ¶¶ 29-31. (Note: counsel for the County has the audio recording of the 911 call being called off by Tanner and used it in Jane Doe's deposition. Counsel says the County might use it and other documents in its possession at trial but refuses to produce it to the Plaintiff.) | Undisputed that a by-stander called 911 to report the traffic collision.<br><br>Otherwise disputed to the extent that these assertions directly contradicts Plaintiff's deposition testimony regarding how this incident occured. See JAFs 20-25 and supporting evidence. |
| 88. | Tanner got out of this car laughing. Plaintiff was hysterical and frightened, asking why Tanner did such | Plaintiff Decl. ¶¶ 29, 30; Plaintiff Dep. at 142:19-147:2. | Undisputed that a by-stander called 911 to report the traffic collision. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | |
|---|---|---|---|
| | a thing, and he just smirked. A bystander saw that Plaintiff was in distress. Plaintiff told the bystander that Tanner was "psycho" and asked her to please call 911; the bystander called 911 for assistance. Tanner used his authority as a law enforcement officer and called the 911 deputy dispatcher, identifying himself as Deputy Tanner, and directed the dispatcher to call off the request for assistance. Deputies did not respond to the call to the location protect the Plaintiff, because the 911 was cancelled. Tanner then grabbed Plaintiff and forced her into his car. | | Otherwise disputed to the extent that these assertions directly contradicts Plaintiff's deposition testimony regarding how this incident occurred. See JAFs 20-25 and supporting evidence. |
| 89. | After the bystander called 911 against Tanner, Tanner used his position as a peace officer as well as leader of the Rattlesnakes, and called | Plaintiff Decl. ¶ 30; Plaintiff Dep. at 146:2-25. | Undisputed that Plaintiff testified that Tanner cancelled the 911 call regarding the traffic collision. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 9007-2710
TELEPHONE   (213) 426-2000

| | | | |
|---|---|---|---|
| | the dispatcher, Deputy Shane Dobra, and directed Dobra to end the 911 call, and it was stopped, with no help and protection for Plaintiff from Tanner. | | Otherwise disputed to the extent that these assertions directly contradicts Plaintiff's deposition testimony regarding how this incident occurred. See JAFs 20-25 and supporting evidence. See also Cook depo at p. 148:3-14. |
| 90. | After calling off the 911 call into himself, Tanner handled Plaintiff and forced her into his car with him. | Plaintiff Decl. ¶ 31. | Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony regarding how this incident occurred. Plaintiff testified that, after the incident, Tanner put her in a "bear hug" and said "we're going home now." See Cook depo at p. 146 :22-24. |
| 91. | Deputies at LASD did not | Plaintiff Decl. ¶ | Disputed to the extent |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | |
|---|---|---|---|
| | respond to the 911 call because Tanner called it off. | 32. | that this assertion directly contradicts Plaintiff's deposition testimony regarding how this incident occurred. Plaintiff testified that they left the scene within minutes, and that she does not know whether emergency personnel or law enforcement ever responded. See JAF 25; Cook depo at pp. 148: 19-25; 149: 1-16. |
| 92. | Tanner threatened Plaintiff with his deputy subgroup, letting her know that the deputies would kill her if she reported his violence against her. | Plaintiff Decl. ¶ 24; Plaintiff Dep. at 198:6-18. | Undisputed as to Plaintiff's testimony that Tanner threatened her. |
| 93. | Lancaster Station personnel, including supervisors such as the watch commander and a lieutenant, repeatedly saw Plaintiff accompany Tanner | Plaintiff Decl. ¶ 13. | Undisputed that Tanner took Plaintiff on multiple, unauthorized ride-alongs. |

| | | | |
|---|---|---|---|
| | to work at the station as part of her participation in the ride-along. | | Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony regarding the circumstances surrounding the ride-alongs. See Cook depo at pp. 191:17-25; 192:1-9; 193:24-25; 194:1-13.<br><br>Plaintiff testified that "[n]o one was aware" of her participation in the ride-alongs. See Cook depo at p. 192:17-18. |
| 94. | Plaintiff observed Tanner to be in charge of the Lancaster Station, as deputies and supervisors deferred to him. | Plaintiff Decl. ¶ 14. | Vague as to the term "in charge." Undisputed that Tanner was assigned to Lancaster Station and had a good working relationship with his colleagues. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| 95. | Supervisors did not object to Tanner having Plaintiff accompany him on ride-alongs and at the station; no supervisor ever objected to Plaintiff being on ride alongs on calls with Tanner; no supervisor ever questioned Tanner because of his status at the station, in control of it. | Plaintiff Decl. ¶¶ 11-13. | Undisputed that Tanner took Plaintiff on multiple, unauthorized ride-alongs. Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony regarding the circumstances surrounding the ride-alongs. See Cook depo at pp. 191:17-25; 192:1-9; 193:24-25; 194:1-13. Plaintiff testified that "[n]o one was aware" of her participation in the ride-alongs. See Cook depo at p. 192:17-18. |
| 96. | Tanner was the shot caller at the Lancaster Station; as the leader of the subgroup he | Plaintiff Decl. ¶¶ 14, 20; Kennedy Decl. ¶ 10. | Vague as to the term "shot caller." Undisputed that |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 9017-2710
TELEPHONE (213) 426-2000

| | | | |
|---|---|---|---|
| | was the leader from the deputy level, bypassing the official command structure. | | Tanner was assigned to Lancaster Station at the time. Otherwise disputed. |
| 97. | Tanner often choked Plaintiff out, and committed other violence against her, while he was on duty, patrol for LASD. | Plaintiff Decl. ¶ 9. | Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony. Plaintiff testified that the choking incidents occurred at their shared apartment, and that all on-duty incidents occurred at the apartment when Tanner was on lunch break. See Cook depo at pp. 85: 8-25; 86: 1-7; 121: 24-25; 122: 1-25; 123: 1-23; 177: 5-24; 191:3-15; 180: 8-25; 181: 1-25; 188:8-15. |
| 98. | Plaintiff was told by Tanner that he was the shot caller of the deputy "gang," and that | Plaintiff Decl. ¶ 14; Plaintiff Dep. at 199:8-12. | Undisputed. |

| | | | |
|---|---|---|---|
| | he ran the patrol station. | | |
| 99. | Dating to as far back as 2013, the U.S. Department of Justice found that the County of Los Angeles had practices and customs that led to harms to residents such as Plaintiff, as Rattlesnakes Deputy gang members were allowed by LASD to deprive residents of their constitutional rights, engaging in excessive force, and other illegal acts. | Kennedy Decl. ¶¶ 4, 15 [DOJ Rpt; COC Rpt]. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |
| 100. | Party admissions made by Civilian oversight Commission Chairman, Sean Kennedy on behalf of the County, and admissions by other top County leaders on behalf of the County, verified by Sean Kennedy, include that the Defendant County are made that the County has a 50-year gang problem, that the County never addressed and ended | Kennedy Decl. ¶¶ 3-8. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | |
|---|---|---|---|
| | the practices, cited by the DOJ in 2013, that allowed the rattlesnakes and other gangs to flourish. | | |
| 101. | The Civilian Oversight Commission held hearings on the County's practices allowing deputy gangs including the Rattlesnakes to flourish, break the law, and deprive citizens of their constitutional rights." | Kennedy Decl. ¶¶ 7, 20; County's expert Neil Tyler's COC and deposition testimony; Roger Clark Expert Decl. ¶¶ 10-11. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |
| 102. | In March 2023, Civilian Oversight Commission report was endorsed and approved by the Board of Supervisors. | Kennedy Decl. ¶ 8. | Undisputed. |
| 103. | During the entire time that Tanner terrorized the Plaintiff, the County continued its practices of allowing Tanner and other deputy gang members to deprive citizens such as Plaintiff of their constitutional rights; in March 2023, the COC | Kennedy Decl. ¶¶ 8, 20; Clark Decl. ¶¶ 3, 12, 13, 17. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | |
|---|---|---|---|
| | submitted its Report on deputy gangs, finding the County practices had not stopped, and the County's Board of Supervisors approved it. | | |
| 104. | In 2020 and in 2023, LASD, in acknowledgment of the long-standing practices, passed new policies, purporting to address deputy gangs, but the practices continued in the department, with the policies not enforced. | Kennedy Decl. ¶¶ 25-28. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |
| 105. | Deputies told ICIB in interviews that Tanner was the shot caller of the rattlesnakes and ran the Lancaster station as alleged by Jane Doe. | Kennedy Decl. ¶ 10. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |
| 106. | Despite Deputies and Jane Doe telling investigators about Tanner and the role of the deputy gang the rattlesnakes, LASD did not terminate Tanner for his acts | Deacon Decl. ¶ 3 [County's evidence]. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |

42

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | |
|---|---|---|---|
| | against the Plaintiff and for his membership in the illegal deputy gang. | | |
| 107. | The tattoo is the tattoo of the Rattlesnakes deputy gang, the same tattoo cited to by the DOJ in its findings of unconstitutional practices in LASD. | Kennedy Decl. ¶ 5; Clark Expert Decl. ¶¶ 15, 16, 18, 19. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |
| 108. | The rattlesnakes are a deputy gang. | Kennedy Decl. ¶¶ 12, 4 [Exhibit A, 2013 DOJ report]; Clark Expert Decl. ¶¶ 15, 18, 19. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |
| 109. | The County makes the admission that deputies confirmed that Tanner was the shot caller and leader of the Rattlesnakes gang and station. | Kennedy Decl. ¶ 10. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |
| 110. | Plaintiff discovered that Volk lied to ICIB investigator Sgt. Lilly Parra about the interview with Plaintiff. Volk lied that when Volk asked Plaintiff if she | Plaintiff Decl. ¶ 46. | Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony regarding this event. |

| | | | | |
|---|---|---|---|---|
| | could speak to Plaintiff's daughter, that Plaintiff refused. In truth, Plaintiff offered to get her daughter to speak with Volk. Volk also lied that Plaintiff answered affirmatively to Volk trying to get her to say that Tanner only choked her out during sex, that Plaintiff liked being "strangled." Plaintiff made it clear to investigator Parra that Volk lied to her, and that none of the numerous times that Tanner strangled her unconscious was during sex. | | | See Cook depo at pp. 5-25; 73:1-25; 74:1-25; 75:1-25; 76:1-25; 77:1-25; 78:1-8. |
| 111. | LASD did not terminate Tanner for Tanner's deputy gang membership and accompanying conduct towards Plaintiff; LASD fired him for unrelated matter. | Deacon Decl. ¶ 3 [County's evidence]. | Undisputed. |
| 112. | While on route to a department event "Baker to Vegas," Tanner abused Plaintiff while fellow | Plaintiff's Decl. ¶ 25. | Disputed to the extent that this assertion directly contradicts Plaintiff's deposition |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

44

| | deputies rode in the vehicle with Tanner and Plaintiff. The deputies made observations and gestures communicating they knew Tanner was beating Plaintiff buy did not report the abuse. | | testimony regarding this event. See JAF Nos. 13-16, 19 and supporting evidence. |
|---|---|---|---|
| 113. | Tanner and LASD caused Plaintiff severe emotional distress, severe mental damage, and PTSD. | Dr. Elias Decl. ¶ 7; Plaintiff Dep. at 251:19-252:6. | Disputed for being irrelevant. |
| 114. | As a result of Tanner and LASD's conduct, Plaintiff also suffered financial losses, as she is afraid to leave her house and has reduced her work hours. | Plaintiff Dep. at 263:6-264:9; Plaintiff Decl. ¶ 49. | Disputed for being irrelevant. |
| 115. | Plaintiff went on about 30 Ride-Alongs with Tanner and spent substantial time at the station with him in full view of the Watch Commander, a lieutenant, and other supervisors, who never raised objection to Plaintiff being on such Ride-Alongs. | Plaintiff Decl. ¶¶ 10, 11. | Undisputed that Tanner took Plaintiff on multiple, unauthorized ride-alongs. Disputed to the extent that this assertion directly contradicts Plaintiff's deposition |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

45

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | |
|---|---|---|---|
| | | | testimony regarding the circumstances surrounding the ride-alongs. See Cook depo at pp. 191:17-25; 192:1-9; 193:24-25; 194:1-13.<br><br>Plaintiff testified that "[n]o one was aware" of her participation in the ride-alongs. See Cook depo at p. 192:17-18. |
| 116. | Plaintiff's Ride-Alongs with Tanner were tacitly authorized by LASD; they were done in full view of numerous deputies and supervisors, but no one at LASD raised any objections to them. | Plaintiff Decl. ¶¶ 11, 13. | Undisputed that Tanner took Plaintiff on multiple, unauthorized ride-alongs.<br><br>Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony regarding the circumstances surrounding the ride- |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | alongs. See Cook depo at pp. 191:17-25; 192:1-9; 193:24-25; 194:1-13. Plaintiff testified that "[n]o one was aware" of her participation in the ride-alongs. See Cook depo at p. 192:17-18. |
|---|---|---|---|
| 117. | [Intentionally left blank] | [Intentionally left blank] | |
| 118. | Plaintiff ended her relationship with Tanner in September 2022. Tanner continued to stalk Plaintiff, repeatedly showing up at her apartment and place of work, the gym, and at the grocery store throughout 2023 and into 2024. | Plaintiff Decl. ¶¶ 34-37. | Undisputed that the relationship ended in September 2022. Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony regarding the alleged stalking incidents. See JAF Nos. 26-30, and supporting evidence. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| 119. | Plaintiff was first interviewed by an employee of LASD about Deputy Tanner because of an incident that occurred on one of the Ride-Alongs in which Plaintiff was a participant. Plaintiff was interviewed as a witness when Tanner pulled over a drunk, speeding driver, who turned out to be another deputy. The drunk deputy assaulted Tanner and tried to confront Plaintiff. | Plaintiff Decl. ¶¶ 38-40. | Undisputed that Plaintiff was interviewed by an LASD personnel regarding an unrelated investigation. Otherwise disputed to the extent that it directly conflicts with Plaintiff's prior testimony. See JAF Nos. 51-53, and supporting evidence. |
|------|------|------|------|
| 120. | The County was deliberately indifferent to Plaintiff's constitutional rights by allowing a culture of corruption and abuse and lawlessness to infect LASD and failing to implement adequate reforms to address the deep-rooted problem of deputy gangs. | Kennedy Decl. ¶ 4 [Ex. A, "Investigation of Los Angeles County Sheriff's Department Stations in Antelope Valley," U.S. Department of Justice Report dated June 28, | Disputed for being argumentative and unsupported by any competent, admissible evidence. |

| | | | |
|---|---|---|---|
| | | 2013 ("DOJ Rpt.") at pp. 1, 5, 29, 44]; Clark Expert Decl. ¶¶ 3, 4, 10, 12, 14. | |
| 121. | The U.S. Department of Justice's investigation of unconstitutional conduct by deputies at two stations, including Lancaster where Tanner worked, "found deficiencies in how the Antelope Valley stations implement the use of force review systems that LASD has put in place, deficiencies that compromise LASD's ability to effectively respond to problematic uses of force by Antelope Valley deputies. While LASD supervisors in the Antelope Valley appeared willing to offer guidance or mild critiques of officer uses of force, we found a pattern of reluctance to hold deputies accountable | Kennedy Decl. ¶ 4 [DOJ Rpt. at 29-30]. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

49

| | | | | |
|---|---|---|---|---|
| | | even when they commit serious violations of LASD policy, including significant uses of unreasonable force." | | |
| | 122. | The DOJ also found "Some Antelope Valley deputies wear tattoos or share paraphernalia with an intimidating skull and snake symbol as a mark of their affiliation with the Antelope Valley stations." | Kennedy Decl. ¶ 4 [DOJ Rpt. at 44]. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |
| | 123. | The February 2023 Sheriff's Civilian Oversight Commission's report ("COC Rpt") found that deputy gangs "engage in misconduct directed against the community such as excessive force and violations of constitutional rights. The factual investigation has revealed widespread, deliberate misconduct that at minimum violates fundamental principles of professional | Kennedy Decl. ¶ 8 [COC Rpt. at 44-45]. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 9017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| | | | | |
|---|---|---|---|---|
| | | policing and in many cases appears to violate the law." | | |
| | 124. | According to Neal Tyler—the County's own retained expert here—"the problem is still with us today, and I do view it as a problem, that there are secretive exclusive subgroups improperly symbolized, and the fact that that is still there, we have to look at our own accountability for that problem still existing." | Neal Tyler Dep. at 56:4-8. | Disputed. The evidence does not state such. |
| | 125. | This observation is consistent with Tyler's testimony before the COC in which he states that "various actions taken about the deputy subgroups . . . were effective on a small scale but not on the widespread scale necessary." This "enabled the subgroups to flourish . . . and thrive for up to 50 years." | Kennedy Decl. ¶ 20 [Exh. D, Los Angeles County Sheriff Civilian Oversight Commission (Oct. 14, 2022), Special Hearing on Deputy Gangs in the Sheriff's Department, p. 14:12-22]. | Disputed for being argumentative and unsupported by any competent, admissible evidence. |
| | 126. | According to Plaintiff's | Miller Decl. ¶ 3 | Disputed for being |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | |
|---|---|---|---|
| | police practices expert, Roger Clark, "the Sheriff's Department and County of Los Angeles' customs, policies, practices, and/or procedures . . . encouraged, allowed, and/or ratified by policy making officers/deputies . . . the use of excessive and/or unjustified force." | [Ex. B, Roger Clark Expert Report (August 4, 2025), p. 10]; Clark Expert Decl. ¶¶ 3, 12, 14, 17, 21. | argumentative and unsupported by any competent, admissible evidence. |
| 127. | Tanner violently assaulted Plaintiff during LASD Ride-Alongs. | Plaintiff Decl. ¶¶ 9, 15, 17. | Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony. Plaintiff testified that the choking incidents occurred at their shared apartment, and that all on-duty incidents occurred at the apartment when Tanner was on lunch break. See Cook depo at pp. 85: 8-25; 86: 1-7; 121: |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| | | | |
|---|---|---|---|
| | | | 24-25; 122: 1-25; 123: 1-23; 177: 5-24; 191:3-15; 180: 8-25; 181: 1-25; 188:8-15. |
| 128. | Tanner often inflicted pain on Plaintiff by twisting her wrist until she could not handle the pain anymore. Tanner did this at least three times while Plaintiff was riding in his patrol car, on duty, during a Ride-Along. Tanner also twisted Plaintiff's wrist to make her fall to the ground in pain, while they were walking outside the patrol car during Ride-Alongs. He also did it many times at Plaintiff's apartment, sometimes when they stopped there while on a Ride-Along break. | Plaintiff Decl. ¶¶ 9, 15, 17. | Disputed to the extent that this assertion directly contradicts Plaintiff's deposition testimony. Plaintiff testified that the use-of-force incidents occurred at their shared apartment, and that all on-duty incidents occurred at the apartment when Tanner was on lunch break. See Cook depo at pp. 85: 8-25; 86: 1-7; 121: 24-25; 122: 1-25; 123: 1-23; 177: 5-24; 191:3-15; 180: 8-25; 181: 1-25; 188:8-15. |

DATED:  October 17, 2025          HURRELL CANTRALL LLP


By: /s/ Blessing O. Ekpezu
THOMAS C. HURRELL
BLESSING O. EKPEZU
Attorneys for Defendant, COUNTY OF LOS ANGELES

DATED:  October 13, 2025          LAW OFFICES OF VINCENT MILLER


By: /s/ Vincent Miller
VINCENT MILLER
Attorneys for PLAINTIFF, JANE DOE

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

54