Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Blessing O. Ekpezu, State Bar No. 332308
E-Mail: bekpezu@hurrellcantrall.com
HURRELL CANTRALL LLP
800 West 6th Street, Suite 700
Los Angeles, California 90017-2710
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendant, COUNTY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

JANE DOE,

      Plaintiff,

      v.

COUNTY OF LOS ANGELES, a municipal entity; AARON TANNER, an individual, DOES 1-100 inclusive,

      Defendants.

Case No. 2:24-cv-08649-SPG(SKx)

**DEFENDANT COUNTY OF LOS ANGELES' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

(***Filed Concurrently with Defendant's Request for Judicial Notice***)

[Assigned to Hon. Sherilyn Peace Garnett, Courtroom "5C"]

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

      Defendant, COUNTY OF LOS ANGELES ("County" or "Defendant") hereby submits its Reply to Plaintiff, JANE DOE's ("Plaintiff") Opposition to Defendant's Motion for Summary Judgment/Adjudication, as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

      Plaintiff's opposition fails to raise a genuine dispute of material fact and confirms that summary judgment should be granted for the County. Unable to rebut the County's showing that Tanner acted in a purely private capacity, Plaintiff

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

abandons the factual record and instead attempts to manufacture disputes through a sham affidavit, an unsigned declaration, and irrelevant media reports. Her opposition is a last-ditch effort to recast a private relationship as official County action.

The record however remains undisputed: every alleged act occurred in private settings, unconnected to any exercise of official authority. There is no constitutional violation and no *Monell* basis for municipal liability. Plaintiff concedes that her state-law negligence claim is unmeritorious. Summary judgment should therefore be entered for the County on all causes of action.

## II.    ARGUMENTS

### A.    The Record Establishes That Tanner Did Not Act Under The Color of State Law

Plaintiff offers no competent, admissible evidence connecting his alleged private misconduct to any exercise or pretense of official authority. Her new theories rely on speculation and contradictions to her own sworn deposition testimony. Plaintiff now contends that Tanner assaulted her during "official LASD Ride-Alongs" and while invoking police power, but her deposition testimony flatly refutes that claim.

When asked about the circumstances of the ride-alongs, she testified:

> "I'd be off work. I'd just be doing nothing. His day shift, and so he'd offer… hey, I'm thinking about you. Can I come pick you up or do you want to come hop in the car and go for a ride along. And I'd be like, yeah. And then he'd pick me up from my house, and I'd stay with him until end of shift. And then he'd change out of the station, finish up his paperwork, and then we'd head home and he'd drop me off."

**Question:** "Did you sign any paperwork?"
**Answer:** "No."

**Question:** "Were any of these ride-alongs scheduled

through the Los Angeles County Sheriff's Department?"
**Answer:** "No. Because I didn't sign anything. No one was aware."

**Question:** "You also talked about him driving you places in his patrol car when he was off duty. Did that ever happen?"
**Answer:** "I don't feel it was off duty…"

**Question:** "All right. Can you describe the occasions when this happen (sic)?"
**Answer:** "It was very frequent. Like, let's say if he had to drop my daughter off to my mom or something, he'd use his patrol car, but he'd be on duty. So he'd take her there. Or if I was having car issues or something, like, he'd use – he'd pick me up in his patrol and drop me off to work. Things like that."

(See excerpts of Plaintiff's deposition transcript cited in support of JAF 34-36.)

These admissions eliminate any claim that the "ride-alongs" were part of an official LASD program. The LASD Ride-Along Policy (Manual § 5-09/250.00) requires pre-approval from a station commander, signed waivers, and participant logs. (See JAF 60-61.) Plaintiff met none of these prerequisites. No LASD station/unit commander pre-approved Plaintiff's participation and she signed no waiver. There is no departmental record of her inclusion in any authorized ride-along. The program is intended for members of the public including students, to familiarize themselves with LASD stations and facilities. By her own account, no one in LASD knew she was accompanying Tanner. The so-called "ride-alongs" were instances of Tanner spending personal time with his romantic partner, Plaintiff, and occasionally giving her and her daughter rides.

Her testimony about the supposed "on-duty" incidents confirms the same point. Plaintiff testified thus:

**Question:** "Okay. Okay. So in your interrogatory responses, you did say that Tanner abused you while on duty and sometimes off duty."

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 9OO17-2710
TELEPHONE  (213) 426-2000

**Answer:** "Uh-huh."

**Question:** "So can you please distinguish for the record which of these incidents happened while he was on duty versus when he was off duty?"
**Answer:** "Okay. So – and the violence was the same on and off duty. So if it was on duty, he would come home from lunch or come to have lunch there with me or use the restroom. Because cops don't like using public – like public restrooms. That's a thing. And so, like, he'd come back home and like, use the restroom or have lunch with me. And then, like that's when it'd happen. Like, he'd, like, snatch me up or throw me on the ground or grab my wrist or, like, pin me down to the ground."

**Question:** "So the – the lunch break was at the apartment that you shared?"
**Answer**: "Yeah. That – that was often. We would do that, like, if he was at work – he'd like buy lunch and then come bring it back and we'd have lunch."

**Question:** "So apart from the lunch break incidents, every other thing happened while he was off duty?"
**Answer:** "Yes."

**Question:** "Okay. For – for the incidents that you claim were on duty, did you ever report any of the incidents to the County –
**Answer:** "No."
**Question continued**: "--to – the sheriff's department?"
**Answer**: "No."

**Question:** "And did any of this (sic) incidents occur outside of your home?"
**Answer:** "Like, the physical –
**Question:** "No. I mean, the ones  you said were on duty."
**Answer**: "No. They did not. "

(See excerpts of Plaintiff's deposition transcript cited in support of JAF 37-39.)

Thus, even crediting Plaintiff's version of events, the alleged conduct was

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

4

entirely domestic as they occurred in private settings and motivated by personal reasons. The fact that Tanner sometimes wore his uniform or drove an LASD patrol vehicle is legally irrelevant; misuse of government property does not transform private conduct into state action. See *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996); *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998).

Plaintiff's reliance on *Hess v. Garcia*, 72 F.4th 753 (7th Cir. 2023), an out-of-circuit decision, is misplaced. Plaintiff cites no controlling Ninth Circuit authority because none exists. In any event, *Hess* is factually inapposite. It involved a minor who was required by her school to participate in an official police ride-along with an officer she had never met. The officer used his position to isolate and assault the student sexually. The Seventh Circuit allowed the plaintiff to proceed with her fourth and fourteenth amendment violation claims, finding that the plaintiff had plausibly alleged that the officer seized her and violated her constitutional right to bodily integrity. Here, by contrast, Plaintiff was an adult in a consensual romantic relationship with Tanner, voluntarily accompanying him for personal reasons on informal, unauthorized outings. The factual and legal contexts are worlds apart.

Plaintiff's assertion that Tanner acted under color of law by allegedly canceling a 911 call after the brake-check incident on 2022 New Year's Eve likewise fails. There is no evidence Tanner identified himself as a deputy, displayed a badge or invoked police authority. At most, he made a personal phone call which is conduct indistinguishable from that of any private citizen. Moreover, any claim from that incident is time-barred. Plaintiff does not contest that any alleged "stalking" incidents occurring after Tanner's termination from LASD on December 1, 2023 was private since Tanner no longer possessed any state-conferred authority to invoke.

The undisputed record establishes that all alleged conduct occurred in private or social contexts, motivated by personal reasons and entirely unrelated to any

exercise of official power. Plaintiff's shifting theories cannot overcome her sworn admissions or the governing law. No reasonable juror could conclude that Tanner acted under color of state law, and Plaintiff's § 1983 claim therefore fails as a matter of law.

###    B.    Plaintiff's *Monell* Theory Fails as a Matter of Law

A *Monell* claim cannot survive without an underlying constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).* Because Tanner did not act under color of law, there is no predicate constitutional violation and no municipal liability.

Even setting that aside, Plaintiff fails to identify any policy, custom, or deliberate indifference by the County that could be considered the moving force behind her alleged harm. She admits that she never signed the waiver required for participation in the LASD Ride-Along Program and that no supervisor approved of her participation. Plaintiff also concedes that she is unaware of any County policy encouraging deputy gangs and that she only learned of the "Rattlesnakes" from Tanner himself. She never reported any incident of domestic violence to LASD while their relationship was ongoing. The record shows that LASD had policies expressly prohibiting the very conduct at issue—domestic violence, unauthorized ride-alongs, and participation in any law-enforcement clique or "deputy gang".

Plaintiff's reliance on reports and commentary about unrelated LASD stations or historical issues, is unfounded. None of those documents—whether from the Civilian Oversight Commission or the Department of Justice—mentions Tanner or the specific conduct at issue here. Generalized criticisms of LASD operations in the past decade cannot satisfy the causal nexus required under *Monell*. Not a single piece of competent evidence links Tanner's alleged domestic abuse of a romantic partner to any County policy, training failure, or tolerated practice.

Rather, the evidence shows that LASD responded swiftly once notified. Plaintiff admits she first contacted the Department in mid-2023, many months after

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

her relationship with Tanner ended. LASD's ICIB immediately opened an inquiry and dispatched investigators to interview her at her home. Within months, LASD terminated Tanner's employment for unrelated misconduct. Under this record, Plaintiff's claim of indifference or ratification is foreclosed. Plaintiff does not identify any policymaker who would have ratified Tanner's conduct. She does not present any evidence indicating that Tanner was not sufficiently trained.

This case is about alleged domestic violence between two individuals in a private romantic relationship. It is not a case about County policy, training, or official action. The County had clear, written prohibitions against the conduct alleged, promptly investigated Plaintiff's complaint once received, and terminated the employee involved. Therefore, Plaintiff's *Monell* claim fails as a matter of law and summary judgment should be entered for the County.

### C.    Plaintiff Concedes Her Negligence Claim is Meritless

Plaintiff concedes that her state-law negligence claim lacks merit and indicates an intent to dismiss it. As of the date of this filing, however, no dismissal has been entered on the docket. Accordingly, the County respectfully requests that the Court enter summary judgment in its favor on this claim to ensure its final disposition.

### D.    The § 1983 Claim Is Time-Barred

By Plaintiff's own account, she recognized Tanner's alleged misconduct as it occurred and chose to remain in the relationship until September 2022. She filed this action on May 29, 2024. Applying the two-year limitations period, Plaintiff's § 1983 claim is time-barred as to all alleged conduct before May 29, 2022.  Cal. Civ. Proc. Code § 335.1; *Wallace v. Kato*, 549 U.S. 384, 388 (2007). This includes the 2021 choking incidents at the apartment, the New Year's Eve 2021 brake-check 911-call incident, and the March 2022 Baker-to-Vegas incidents.

Plaintiff's attempt to argue "continuing violation" fails for two independent reasons. First, the operative First Amended Complaint ("FAC") does not allege a

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

continuing violation theory and Plaintiff cannot assert it for the first time in her opposition brief to salvage her untimely claims. The FAC defines the scope of this motion. Courts do not consider theories raised for the first time in opposition to summary judgment. See *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). Second, the theory does not apply here because each alleged act was separate and complete when it occurred. See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 747 (9th Cir. 2019).

### E.    Plaintiff's Use of a Pseudonym Is Improper

Plaintiff filed and continues to prosecute this action under the pseudonym "Jane Doe" without seeking or obtaining court approval, in violation of Rule 10(a) of the Federal Rules of Civil Procedure, which requires that all parties be named. The Ninth Circuit allows pseudonyms only in exceptional circumstances and with prior leave. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000).* That the County knows Plaintiff's identity does not cure the violation because Rule 10(a) safeguards public transparency, not private notice. Plaintiff's belated offer to amend confirms the impropriety. If the case proceeds, the Court should order amendment to reflect Plaintiff's true name or dismiss without prejudice pending compliance.

### F.    Plaintiff's Opposition Relies on Improper and Inadmissible Evidence

Plaintiff's opposition violates this Court's Standing Order (Dkt. 22) and cannot defeat summary judgment. It rests on a sham affidavit contradicting her own deposition testimony, an unsigned declaration, and voluminous unauthenticated materials. The Ninth Circuit prohibits parties from creating disputes of fact through contradictory affidavits. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991); *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012.) As shown above, Plaintiff's declaration conflicts with her sworn statements regarding the "ride-

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

8

alongs" and "on-duty" incidents and must be disregarded as a sham.

She also relies on the unsigned declaration of Sean Kennedy and numerous media reports and commentary about LASD deputy gangs, none of which are authenticated or relevant. Unsigned declarations have no evidentiary value, and unauthenticated hearsay cannot be considered on summary judgment. *Zarian v. Legere*, 2020 WL 10622584, at *2 (C.D. Cal. 2020)* ( "An unsigned declaration is of no effect; it is certainly not evidence.")*; Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).* None of these materials mention Tanner or the facts of this case and appear intended only to manufacture a false impression of factual dispute. The Court should strike or disregard these submissions and grant summary judgment for the County.

## III.   **CONCLUSION**

For the foregoing reasons and for those stated in the moving paper, Defendant County of Los Angeles respectfully requests that the Court grant summary judgment in its favor on all claims.

DATED: October 22, 2025          HURRELL CANTRALL LLP

By:   ___*/s/ Blessing O. Ekpezu*___
      THOMAS C. HURRELL
      BLESSING O. EKPEZU
      Attorneys for Defendant, COUNTY OF
      LOS ANGELES

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000